IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00285-BO

**Elaine G. Kirk**, Administratrix of the Estate of Charles F. Kirk, Jr., deceased,

Plaintiff,

v.

**SSC Goldsboro Operating Co. LLC d/b/a Brian Center Health & Rehabilitation/Goldsboro**, et al.,

Defendants.

**Order**

Plaintiff Elaine G. Kirk, the administratrix of her late husband's estate, has sued SSC Goldsboro Operating Co. LLC d/b/a Brian Center Health & Rehabilitation/Goldsboro, and the administrative and consulting contractors for Brian Center. She alleges that the treatment her husband, Charles Kirk, received during his two-week stay at Brian Center contributed to his death. She also claims that these defendants engaged in a pattern of corporate malfeasance that favored profit over patient care.

Elaine asks the court to compel the defendants to supplement their answers to some of her interrogatories and requests for production of documents. She claims their responses do not comply with the Federal Rules. The defendants disagree.

After reviewing the parties' submissions, the court will grant Elaine's motion in part and deny it in part for the reasons outlined below.

**I.  Background**

Brian Center Health & Rehabilitation/Goldsboro is a skilled nursing facility in Goldsboro, North Carolina. Second Am. Compl. ¶1, D.E. 38. SavaSeniorCare Administrative Services, LLC

contracts with Brian Center to provide certain "Back Office" services. D.E. 67 at 1. SavaSeniorCare Consulting, LLC also contracts with Brian Center to provide consulting services. D.E. 68 at 1. These consulting services "provide support to the facility, when needed, in nursing, physical therapy, dietary, [and] budgetary matters[.]" D.E. 66 at 2.

In August 2017, Charles entered Brian Center after being in the hospital. Second Am. Compl. ¶25. He suffered from aphasia and cognitive defects caused by a stroke, including short and long-term memory issues, impaired decision-making abilities, confusion, disorientation, and difficulty with speech. *Id.* ¶26. He required a feeding tube and depended on Brian Center staff for help with his daily needs, including transfers, mobility, toileting, hygiene, and nutrition. *Id.* ¶¶26–27.

Charles stayed at Brian Center for 15 days. *Id.* ¶¶1–2. While there, he suffered multiple injuries, including urinary tract infections, traumatic injury to his urethra, aspiration pneumonia, malnutrition, and dehydration. *Id.* ¶29. After another stay in the hospital later in August, Charles did not return to Brian Center. *Id.* ¶¶47, 51. He died the next month. *Id.* ¶3.

Elaine sued the defendants in state court, claiming that Charles's time at Brian Center "contribut[ed] to and hasten[ed] [his] untimely death." *Id.* ¶29. She believes "Defendants made operational, budgetary, and administrative decisions that were determined more by the financial needs and goals of the Defendants than by the custodial, medical, and nursing needs of residents of the Facility, including" Charles. *Id.* ¶31. The defendants removed the case to federal court and the parties have engaged in discovery for the last several months.

**II.    Discussion**

The Federal Rules allow parties to "obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R.

Civ. P. 26(b)(1). Considerations of proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* But the court retains the authority to limit the "frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(i).

Under the Federal Rules, a party may move to compel discovery when another party fails to answer interrogatories or produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)−(iv). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

As part of discovery in state court, Elaine served interrogatories and requests for production of documents on the defendants in June 2019. D.E. 65 at 2 n.1. She served the requests again in September 2019 after the case arrived in federal court. *Id.* at 2. The parties agreed the defendants would respond to her requests by the November 1, 2019. D.E. 50.

But when that date arrived, Elaine found the defendants' responses to be underwhelming. Brian Center served unverified, "deficient[,] and incomplete" discovery responses. *Id.* at 2. Sava Administrative and Sava Consulting provided "untimely, unverified, and incomplete responses" four days after Brian Center. *Id.* at 2−3. The defendants have since supplemented some responses, but have not fully responded to the discovery requests. *Id.* at 3. The parties have unsuccessfully

3

tried to resolve this dispute without involving the court. *Id.* Elaine now asks the court to order the defendants to provide complete answers to her interrogatories and requests for production. D.E. 64.

The defendants oppose Elaine's motion. First, Brian Center contends it provided notarized verification in mid-November and that it has and will continue to supplement its discovery responses. D.E. 66 at 3. It explains that the current global pandemic has impacted its ability to supplement discovery, since it cannot access its document-storage facilities. *Id.* But it maintains it has continued to supplement responses as information and documents have become available. *Id.* Sava Administrative and Sava Consulting also contend they provided complete notarized verification to their responses in mid-November 2019. D.E. 67 at 2; D.E. 68 at 2.

With this background in mind, the court turns to each of the disputed discovery requests.

### A. Interrogatory 8 & Request for Production 4

Interrogatory 8 asks the defendants to identify any contract personnel who provided "nursing care, nursing related services, medical services, dietary and nutritional services, pharmacy services, personal care, custodial care, or other services" to Charles during his stay at Brian Center. D.E. 65–3 at 11. It also asks for the employer or contracting party of the personnel. *Id.* And Request for Production 4 requests the defendants "produce a copy of all agreements between such entity or person and the Defendants" for each entity or person identified in Interrogatory 8. D.E. 65–2 at 3.

Elaine argues that the defendants refused to conduct a diligent search, provide timely and accurate answers to basic questions, or produce records containing this information and this constitutes "obstruction of the discovery process[.]" D.E. 65 at 5. Brian Center maintains it has produced all responsive materials and information it knows about, D.E. 66 at 3−4, and Sava

4

Administrative and Sava Consulting they do not have any responsive documents or information, D.E. 65–7 at 5; D.E. 65–8 at 4; D.E. 65–5 at 5; D.E. 65–6 at 4.

At the hearing on this motion, the parties resolved this topic. Thus, the court denies Elaine's Motion to Compel responses to Request for Interrogatory 8 and Request for Production 4 as moot.

### B. Interrogatories 11 & 12

Interrogatory 11 asks the defendants to "identify every business entity" during the time Charles lived at Brian Center "who had the ability to influence the expenditure of any money at the Facility, manage or direct the management or operation of the Facility, or create and modify the policies of the Facility." D.E. 65–1. And Interrogatory 12 asks the defendants to "[i]dentify all persons employed at a corporate, division, regional, district or area level during [Charles's stay at Brian Center] whose job responsibilities included oversight or monitoring any aspect of the operations of the Facility, including financial performance, staffing, census, compliance with budget, and the performance of the administrator or department heads." D.E. 65–1.

Brian Center believes it has answered these interrogatories. D.E. 66 at 4. During Charles's residency, Brian Center's governing body of Brian Center consisted of the President and Vice President of Operations. Brian Center identified President H. Paul Schrank, II and Vice President of Operations Camilla Baughman. *Id.* at 5. It also identified Chief Executive Officer and Administrator Jeff Nunn and Chief Nursing Officer and Director of Nursing Jennifer Boyce. *Id.* at 4.

Sava Consulting also believes it fully answered these interrogatories. D.E. 68 at 2. It identified Camilla Baughman as its District Director of Operations during Charles's residency and a member of Brian Center's governing body. D.E. 65–7 at 5−6. It referred Elaine to its response to Interrogatory No. 7, where it named Baughman and Nunn as members of the governing body.

5

*Id.* at 4. It later supplemented its responses to explain and clarify the makeup of the governing body, which changed several months before Charles's admission. D.E. 68 at 2. It also identified Schrank, its Division President of the East Division of Consulting and a member of the governing body. *Id.*

And Sava Administrative's contractual responsibilities to Brian Center are limited to "providing bookkeeping; accounting; financial reporting and related administrative support; payroll services; and preparation of cost reports and the like," so it has no information responsive to these interrogatories. D.E. 67 at 2; D.E. 65–5 at 5–6.

Elaine argues that she is "entitled to basic information relating to potential witnesses and influential business entities." D.E. 65 at 6. She says the defendants identified no business entity or other corporate personnel overseeing the Facility, including the "Division Director of Operations, Region Vice President of Operations, Regional Clinical Director, Chief Executive Officer, and Regional Human Resources Director/Manager." *Id.* at 5.

Brian Center says that the names of and information about individuals in specific positions like Division Director of Operations, Region Vice President of Operations, and Regional Clinical Director is not responsive to these interrogatories. D.E. 66 at 5. But it also says that none of these positions existed during Charles's stay. *Id.* The court cannot order Brian Center to provide information that does not exist. Thus, the motion to compel as it relates to Interrogatories 11 and 12 is denied as to all defendants. But the court orders Brian Center to formally supplement its response to state that the information Elaine seeks does not exist.

### C. Request for Production 7

Elaine's seventh request for production asks the defendants to produce "all documents which show the dates, times, and hours worked for all nursing and administrative personnel" who

6

worked at Brian Center during Charles's stay. D.E. 65–2 at 5–6. This includes, but is not limited to, time cards, sign-in sheets, work schedules, room/hall assignments, documents showing the actual number of hours of available nursing personnel time or the actual number of nursing personnel on duty during the residency, and other documents and charts containing information on staffing, contract labor, and turnover. *Id.*

Brian Center says it has produced the Daily Census Report for August 2017, Key Factor Detail Report, Key Factor Summary Report, Time Detail Reports, and the Detailed Census Report for August 2017. D.E. 66 at 6; D.E. 65–4 at 6. These documents include "daily employee time clock information and ppd hours (nurse/nurse aide to resident staffing ratios), and daily census during [Charles] Kirk's residency." D.E. 66 at 6. It is unaware of a specific document that includes turnover data. D.E. 65–11 at 2. Brian Center is collecting staffing schedule information from its software program, On Shift, and determining hours for agency personnel during Charles's residency, but the pandemic has delayed its efforts to obtain this information. D.E. 66 at 6. Brian Center otherwise believes it has responded to this request.

Because of the defined responsibilities of the Sava Defendants' contracts with Brian Center, neither Sava Administrative nor Sava Consulting has any responsive information to this request. D.E. 67 at 2; D.E. 68 at 3.

Elaine alleges the defendants have not produced a complete Census Report that includes sections titled "Payer Summary" and "In House Days." D.E. 65 at 6–7. At the hearing on this motion, the defendants said they had produced two census reports. The court orders Brian Center to review its production and produce any remaining documents responsive to this request.

The court is mindful of the difficulties posed by the COVID-19 pandemic. Yet despite the pandemic, the parties still must comply with their discovery obligations. And Brian Center had

7

several months before the pandemic arose to gather responsive documents. So Brian Center must fully respond to this request within 30 days of the date of this order.

The court denies Elaine's motion to compel an answer to Request for Production 7 as it relates to the Sava Defendants. But it grants the motion as to Brian Center.

### D.     Request for Production 9

Request for Production 9 asks the defendants to produce complete personnel records for the persons listed in their responses to Interrogatories 3, 4, 6, and 12. D.E. 65–2 at 7. These people are nurses Wenhemina Greenfield, Melody Williams, and Natarsha Williams; Director of Nursing Jennifer Boyce; Chief Executive Officer and Administrator Jeffrey Nunn; and District Director of Operations Camilla Baughman.

Brian Center says it has produced the complete personnel files of Jeff Nunn and Jennifer Boyce. D.E. 66 at 6–7; *see* D.E. 66–7 at 5. It does not have personnel files for Melody Williams or Natarsha Williams because they were agency nurses. D.E. 66 at 6. And its efforts to locate Wendy Greenfield's personnel file, both at Brian Center and at its off-site document storage facility, did not turn up any documents. *Id.* at 7.

Because of the administrative nature of its contractual relationship with Brian Center, Sava Administrative states it has no information responsive to this request. D.E. 67 at 2; D.E. 65–6 at 6.

Sava Consulting first responded that it had no responsive documents because of its limited consulting relationship with Brian Center. D.E. 65–8 at 6–7. But it has since produced the personnel file of Camilla Baughman and is "in the process of producing" the personnel file for Paul Schrank. D.E. 68 at 3; D.E. 68–2.

8

Elaine claims that some documents are still missing. She says the defendants have produced no documents related to Boyce or Greenfield. D.E. 65 at 7. Elaine says the defendants have ignored her request for Baughman's personnel records and that the defendants produced an incomplete personnel record for Nunn. Elaine requested the missing documents in February 2020. D.E. 65–13.[1]

Sava Consulting said that it already produced Baughman's personnel file and is working to obtain Schrank's file. Brian Center does not have a personnel file on Greenfield because she is an agency nurse. Brian Center says that it has produced the entire personnel files for Boyce and Nunn.

At the hearing on this motion, the court ordered Elaine to send the defendants a list of the documents still missing. The court directs the defendants to make a good faith effort to locate these documents and produce them if they are available. If they cannot, they should supplement their response within 30 days of the date of this order to state that their search has revealed no responsive documents. Brian Center should also supplement its response to state that it has produced all responsive documents in its possession. The court also orders Sava Consulting to produce Schrank's personnel file within 30 days of the date of this order. Thus, Elaine's motion to compel documents in Request for Production 9 is granted for Brian Center and Sava Consulting and denied for Sava Administrative.

E.   **Request for Production 10**

Elaine's tenth request for production asks the defendants to produce "copies of all Training and In-Service Education documents used for training/education conducted from the sixth-month

---

[1] Elaine claimed "[i]ncentive program documents, performance evaluations, sign-on bonus agreement, relocation agreement, exit interview, resignation document, and disciplinary action documents were not produced." D.E. 65-13 at 2.

9

period preceding the residency of [Charles] through the end of the residency." D.E. 65–2 at 7. This includes "all schedules and descriptions of each in-service education and training session, all sign in/attendance records, and materials used for training such as handouts, PowerPoint presentations, videos, modules, or other documents." *Id.*

Brian Center first requested Elaine's counsel specify the types of in-service documentation she wanted. It said it would produce responsive documents, if any existed, related to the subject matter of this lawsuit subject to the Confidentiality Agreement between the parties. D.E. 65–4 at 8–9. Elaine identified 27 in-service topics in November 2019. D.E. 65–9 at 3.

As of the hearing on this motion, the defendants have produced only 40 pages of training documentation: 25 pages related to safe smoking and the other 15 covering droplet and contact precautions, PPE, and misappropriation of resident property. D.E. 65 at 8. Elaine claims that more documents should exist and that these materials should be "readily available through Defendants' staff development coordinator and their staff's access to Defendants' intranet, ViaTech, Courseware, or other training software or program." *Id.* at 8–9. Elaine says that nurses employed at the Center must complete training and law requires Brian Center to maintain documentation of this training, so these documents should be available.

Brian Center says that it has produced all documents found so far that relate to in-service and training. D.E. 66 at 7; *see* D.E. 66–7 at 6. And it argues that Elaine's request did not ask for documents the law requires it to maintain.

Because their contractual relationships with Brian Center does not cover training and education, neither Sava Administrative nor Sava Consulting have any information responsive to this request. D.E. 67 at 2; D.E. 65–6 at 6–7; D.E. 68 at 3; D.E. 65–8 at 7. Elaine's motion to compel is denied as to these defendants.

10

The court generally agrees that it is likely more than 40 pages of training documents exist for a six-month period at the facility. But Request for Production 10 does not ask for documentation of training required by law. Even so, Brian Center must continue its good faith search for responsive materials and produce any other training materials within 30 days of the date of this order. Thus, Elaine's motion to compel documents responsive to Request for Production 10 is granted as to Brian Center.

### F. Request for Production 12

Request for Production 12 directs the defendants to produce "copies of Policies and Procedures which were in effect at the facility during [Charles's] stay." D.E. 65–2 at 8.

Brian Center objects to this request because it is too broad and the information requested is proprietary. D.E. 65–4 at 9. It produced a copy of its table of contents for the policies and procedures in effect during Charles's residency and agreed to produce portions of its Policies and Procedures Manual as requested by Elaine. *Id.* at 9–10. Elaine identified specific policies from the table of contents, but claims the defendants failed to produce them and did not have an explanation for the delay in production. D.E. 65 at 9.

According to Brian Center, it produced the index to its Policies and Procedures Manual and 858 pages of its policies. D.E. 66 at 7; *see* D.E. 66–7 at 7. It also produced a copy of the Employee Handbook in effect during Charles's stay. D.E. 66–6 at 6. Elaine seeks additional materials she calls Modules, but Brian Center says it did not use Modules during the relevant time. D.E. 66 at 7. Brian Center also says it is prohibited from producing the 2013 Infection Prevention Manual and Lippencott 7th ed. for copyright reasons, but that both manuals are available online. *Id.*; *see* D.E. 66–8.

11

Brian Center says it cannot produce the 2013 Infection Prevention Manual and Lippencott 7th ed. because they are copyrighted. The copyright pages of these books state that no portions of them "may be reproduced or transmitted in any form or by any means" without written permission from the copyright owner or publisher. D.E. 66–8. The court finds no case law which supports Brian Center's argument that these copyright notices prevent it from producing the relevant portions of the manuals in discovery, and Brian Center identifies none for the court. Thus, the court orders Brian Center to produce these materials within 30 days of the date of this order. *Compare Vil* v. *Poteau*, Civil Action No. 11–11622, 2015 WL 897965, at *4 n.3 (D. Mass. Mar. 3, 2015) (noting that the court had twice ordered the plaintiff to respond to defendants' discovery requests and produce copyrighted text after defendants filed two motions to compel on the subject).

Because their contractual relationships with Brian Center do not govern Brian Center's policies and procedures, neither Sava Administrative nor Sava Consulting have any information responsive to this request. D.E. 67 at 2; D.E. 65–6 at 8; D.E. 68 at 3; D.E. 65–8 at 8. The motion is denied as to these defendants.

### G.     Request for Production 13

Finally, Request for Production 13 asks the defendants to produce copies of "documents for the one-year period immediately preceding [Charles's] final discharge from the Facility through the three (3) month period immediately following the residency." D.E. 65–2 at 8–9. It asks for documents that fall into one of several categories: complaints and criticisms about resident care; regulatory findings and deficiencies, resident council meeting minutes and related documents, family council meeting minutes and related documents, customer and family surveys along with related data compilations, and employee surveys along with related data compilations. *Id.*

12

Elaine claims the defendants have not produced requested compliance call logs, regulatory surveys, customer/family surveys, or employment surveys. D.E. 65 at 10. While they produced "Concern QA & A Logs," they are so redacted "they are impossible to review." *Id.* And because the defendants have allegedly not provided a privilege log, Elaine says she cannot assess the viability of their privilege claims. *Id.*

Brian Center objects to this request on several grounds. First, it is too broad, unduly burdensome, not limited enough in time or scope, and not reasonably calculated to lead to the discovery of relevant and admissible evidence. D.E. 65–4 at 10. Second, the request "may seek protected information generated for the purposes of quality assurance and peer review." *Id.* Finally, the request "seeks information about other residents and would violate the rights of third parties," whose information is confidential and protected health information under the Health Insurance Portability and Accountability Act. *Id.* And redacting the names of other residents would require Brian Center to defend matters unrelated to Charles. D.E. 66 at 10.

Both Sava Administrative and Sava Consulting also object to this request as overly broad in scope and unduly burdensome. D.E. 67 at 2; D.E. 65–8 at 9. But because of the defined services in their agreements with Brian Center, neither Sava Defendant has any information responsive to this request. D.E. 67 at 2; D.E. 68 at 3.

Brian Center provided a privilege log and produced redacted Resident Council Meeting Minutes, Concern Forms relating to Charles, redacted 24-Hour Initial Reports and 5-Working Day Reports relating to Charles, redacted Concern QA & A Logs, and redacted Incident/Accident Report QA & A Logs. D.E. 66 at 8; D.E. 66–9. It has produced survey documentation maintained by the DHHS about Brian Center, but has located no Customer/Family Surveys or Employee

13

Surveys. D.E. 66 at 9. It has not identified 1–800 number call in logs in a privilege log. *Id.* at 8. Elaine also says that there are outstanding complaint forms that Brian Center needs to produce.

### 1. Scope of Request for Electronically Stored Information

Both Brian Center and Sava Administrative object to the request for electronically stored information (ESI) communication as overly broad and unduly burdensome. *Id.*; D.E. 67 at 2–4. Federal Rule of Civil Procedure 26 states that a party "need not provide discovery of [ESI] from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The party objecting to discovery has the burden of showing inaccessibility. *Westdale Recap Props., Ltd.* v. *NP/I & G Wakefield Commons, L.L.C.*, No. 5:11-CV-659-D, 2013 WL 5424844, at *3 (E.D.N.C. Sept. 26, 2013).

Sava Administrative maintains Brian Center's computer system and storage of ESI information. D.E. 66 at 9. To search its database, a team of engineers and analysts needs to write a software program, which requires search terms and designated positions or individuals. *Id.* Elaine first sought ESI for a 15-month period spanning two calendar years, which Sava Administrative considered an "incomprehensible" period to conduct an ESI and email search without restrictions, given the scope of data it would cover. D.E. 67 at 3. Brian Center and Sava Administrative said it would be unduly expensive and burdensome to produce this volume of information. *Id.* at 4; D.E. 66 at 10. An affidavit from John Curtis, Vice President of IT Systems Engineering at Sava Administrative, states that the cost per search is over $2,500. D.E. 67–2. He identifies at least six positions that engineers will likely need to search for, suggesting a search will, at a minimum, cost over $15,000. *Id.*

The parties have since agreed to limit the time frame to a seven-month period, which has cut the requested period in half. Having considered the proportionality factors in Rule 26, the court

14

finds that the cost of responding to this discovery request is proportional to the needs of the case. Brian Center and Sava Administrative must to confer with Elaine regarding search terms and designated positions or individuals. They should then conduct a search and produce responsive documents.

### 2. HIPAA Concerns

Brian Center also raises production concerns related to HIPAA. The information Elaine requests includes complaints and criticisms of all staff for all residents at Brian Center for the seven-month period. Brian Center is concerned that turning over these documents, which includes confidential and protected health information, will violate HIPAA and require it to defend complaints of other residents not at issue.

The Federal Rules allow the court to enter a protective order to determine whether and how parties may disclose confidential information. Fed. R. Civ. P. 26(c)(1)(G). And "[t]he HIPAA regulations permit disclosure of a person's private medical and mental health information pursuant to a court order if a protective order is in place to prohibit disclosure of the information for a purpose other than the litigation and to require return of the information at the conclusion of the proceedings." *Fields* v. *W. Virginia State Police*, 264 F.R.D. 260, 262 (S.D.W. Va. 2010) (citing 45 C.F.R. § 164.512(e)(1)(i)). The court has entered a consent protective order that specifically protects information which "include[s] patient health information deemed confidential under applicable federal and state statutes . . . [and] provisions of the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')" as confidential. D.E. 48. Brian Center has not explained why the protective order is inadequate to safeguard the confidential nature of this information. The court directs Brian Center to produce the requested information and orders that Elaine and her counsel may only use these materials for the purposes of this lawsuit.

15

Thus, the court grants the motion to compel for Brian Center and Sava Administrative. The court orders these defendants to conduct the necessary ESI searches and to turn over the documents requested in Request for Production 13. The court denies Elaine's motion for this request for production as it relates to Sava Consulting.

### H. Attorney's Fees

Elaine asks the court for reasonable expenses, including attorney's fees, incurred in making her motion. D.E. 65 at 10.

Rule 37 provides that when a court grants in part and denies in part a motion compelling discovery, it may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Before doing so, the court must give the non-moving party "an opportunity to be heard[.]" *Id.* The court heard from the parties on this issue at the motion hearing. After considering their arguments and the outcome of the motion, it is appropriate to award Elaine the fees and expenses she incurred in connection with this motion. Elaine has prevailed on most of the arguments she raised against Brian Center and her positions were well supported. So the court will award her the reasonable expenses incurred in opposing the motion, including attorney's fees.

### III. Conclusion

The court grants Elaine's motion to compel in part and denies it in part. For all defendants, the court denies Elaine's motion for Interrogatories 8, 11, and 12, and Request for Production 4.

For Brian Center, the court grants Elaine's motion for Requests for Production 7, 10, 12, and 13. The court directs Brian Center to produce the documents requested in Requests for Production 7, 10, 12, and 13 as outlined in this order above. The court also directs Brian Center to supplement its responses to Interrogatories 11 and 12 to state that the information Elaine seeks

does not exist. Brian Center must serve its supplemental responses within 30 days from the date of entry of this order.

As to Sava Administrative and Sava Consulting, the court denies Elaine's motion as it relates to Requests for Production 7, 10, 12, and 13.

And the court orders that within 14 days after entry of this order, the parties will meet and confer in an attempt to agree upon the expenses and attorney's fees that Elaine should recover for her attorney's work on this motion. If the parties cannot agree, Elaine will file an accounting of her attorney's fees and costs incurred in pursuing the motion to compel no later than 21 days after entry of this order. Elaine may also submit a supporting memorandum of no more than 10 pages with her request. Brian Center may file a response of no more than 10 pages within 14 days after Plaintiffs file their memorandum.

Dated: August 28, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge